USCA1 Opinion

 

 February 23, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1614 BANCO & AGENCIA FINANCIAMIENTO VIVIENDA DE PUERTO RICO, Plaintiff, Appellant, v. PONCE FEDERAL BANK, F.S.B., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, U.S. District Judge] ___________________ [Hon. Jesus A. Castellanos, U.S. Magistrate Judge] _____________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Boyle, Senior District Judge.* _____________________ ____________________ Emilio F. Soler with whom Bufete Roberto Corretjer Piquer was on _______________ ________________________________ brief for appellant. Francisco A. Besosa, with whom Axtmayer, Adsuar, Muniz & Goyco ____________________ _________________________________ was on brief for appellee. ____________________  ____________________ *Of the District of Rhode Island, sitting by designation. 1 ____________________ Per Curiam. Banco y Agencia Financiamiento de la __________ Vivienda de Puerto Rico ("the Housing Bank") appeals from an order of the district court granting Ponce Federal Bank's motion for summary judgment. When reviewing a district court's entry of summary judgment, we determine de novo ________ whether the moving party has shown "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See ___ also Data General Corp. v. Grumman Systems Support Corp., 36 ____ ___________________ _____________________________ F.3d 1147, 1159 (1st Cir. 1994) "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party and 'material' means that the fact is one that might affect the outcome of the suit under the governing law." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) ______ _____ (citations, internal quotation marks, and brackets omitted). Although "we read the record and indulge all inferences in the light most favorable to the non-moving party," Rivera-Ruiz v. Gonzalez-Rivera, 983 F.2d 332, 334 (1st Cir. ___________ _______________ 1993), the adverse party cannot defeat a well-supported motion by "rest[ing] upon the mere allegations or denials of [its] pleading," Fed. R. Civ. P. 56(e). If the nonmovant bears the ultimate burden of persuasion with respect to its claim or defense, it may avert summary judgment only if it identifies issues genuinely in dispute and advances -3- 3 convincing theories as to their materiality. See Pagano, 983 ___ ______ F.2d at 347 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. ________ ___________________ 242, 247-48 (1986)). We may affirm a district court's grant of summary judgment "'on any ground supported in the record even if the issue was not pleaded, tried or otherwise referred to in the proceedings below.'" de Casenave v. ___________ United States, 991 F.2d 11, 12 n.2 (1st Cir. 1993) (citation ______________ omitted). The district court determined that the Housing Bank was estopped to maintain the instant action against Ponce by virtue of what it described as "public and notarized documents to settle and release the parties from future claims." The documents referred to were submitted as exhibits to Ponce's Statement of Material Facts as to Which There is No Genuine Issue. They included a notarized Deed dated December 7, 1984 and a notarized Acclaratory Deed dated December 31, 1984, whereby Capitana conveyed all unsold lots in the project Colinas de Villa Rosa (the "project") to the Housing Bank. Of particular relevance was a so-called Agreement, Release and Payment of Guaranty (the "Settlement"). The Settlement recites that it was executed on December 7, 1984 by Capitana, Ponce, and the Housing Bank, and was signed by Jos F. Blasini, Executive Vice President, for Ponce; Amado Vega Vega, President, for Capitana; and -4- 4 Francisco Fantauzzi, President, for the Housing Bank. It provides, in pertinent part, 5th: By virtue of this document the ___ Housing Bank and Finance Agency of Puerto Rico releases in its entirety Ponce Federal Bank, F.S.B., from any present and future claim with respect to the project Colinas de Villa Rosa of Sabana Grande, Puerto Rico, and releases Capitana Corporation from any debt with respect to the loan granted to the latter by the Ponce Federal Bank, F.S.B., secured by the Housing Bank and Finance Agency of Puerto Rico. Regarding the Settlement, the Housing Bank contends that there is a disputed issue of fact between the parties as to whether the Settlement accurately evidences the agreement of the parties made on December 7, 1984. The Housing Bank notes that there is reference made to a document of the same date, between the same parties, in an entry in Notary Wendell W. Col n's registry of affidavits, a certified copy of which entry was submitted as an exhibit to Ponce's statement of material facts. It is conceivable, the Housing Bank argues, that the Settlement's terms are different from those of the referenced document, which cannot now be found. Therefore, the Housing Bank argues, Ponce may not rely on the terms of the Settlement as a defense to the Housing Bank's claim for repayment. We find this argument to be lacking in merit. There is a wealth of evidence indicating that the signatories to the Settlement entered into such a release on December 7, -5- 5 1984 and that the Settlement is a valid copy of that release. Ponce submitted the affidavit of Mr. Jose Blasini, one of the signatories, reciting the terms of the release entered into on December 7, which were the same as those in the Settlement. Ponce also presented deposition testimony, given in an earlier case, Vega v. Ponce Federal, No. 88-369(JAF), ____ _____________ by Capitana's outside auditor, Mr. Rivera-Lebr n, stating that he obtained a copy of the Settlement, signed by Vega, Blasini, and Fantauzzi, from Mr. Vega. Further deposition testimony from the Vega case was submitted, in which Mr. ____ Fantauzzi, the president of the Housing Bank, testifies that he signed the release on December 7, the same day that he signed the notarized Deed transferring the remainder of the project to the Housing Bank. He stated that by that release the parties "mutually relieved each other from any claims," and he mentioned several possible claims between the three parties of which he was aware at that time. Thus, whether the copy of the Settlement submitted bears a notarial seal is not dispositive of this case; all of this evidence, combined with the copy of the Settlement, was more than adequate to establish the existence of a release which would serve to bar the instant action. Ponce's evidence strongly suggests, moreover, that the Settlement was identical in its terms to the missing document referenced in Mr. Col n's registry. It is not -6- 6 disputed that the signatures on the Settlement are genuine. In the Vega case Mr. Colon had testified that either one or ____ two days before December 7, 1984, he sent a draft of the document in question from his office in the city of Ponce to the San Juan offices of the Housing Bank. While the document was at that office a change was made to the language of the third page, which was then retyped. He stated that on December 7, 1984, when he arrived at the San Juan offices, he found a change in the manner of expression of one of the clauses.1 He then took the signatures of Mr. Fantauzzi and Mr. Vega in San Juan. Mr. Col n's testimony is not crystal clear as to whether Mr. Blasini signed for the bank in San Juan or in Ponce, nor as to placement of the affidavit on the final copy. However, he recorded the notarization of the document, dated December 7, 1984, in his registry, and  ____________________ 1. The third and last page of the Settlement appears to have been typed on a different machine than that used for the first two pages. It is this page that contains the clause reciting the pertinent release language, followed immediately by a clause denominated an "Acceptance," which reads: The appearing parties accept the foregoing Agreement in the manner drafted since they find same in accordance with the covenants agreed upon among them, and in proof of approval acknowledge and subscribe same in the place and date first above written. This clause is followed by the signatures of the three parties' officers. All three pages of the document bear the initials of each of the three signatories. Thus, it is plain that the signatories of the third page were all aware of the release clause, as the clause was on the page that they signed. -7- 7 neither his testimony nor any other suggests the possibility that more than one version of the release was signed by all three parties as of December 7, 1984. The Housing Bank, in any event, presented no evidence contesting the above. Ponce's submissions amply support its assertion that the Housing Bank released Ponce, as the Settlement recites, from "any present and future claim with respect to the project," on December 7, 1984. "When one party has properly supported a motion for summary judgment, the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Playboy _______ Enterprises, Inc. v. Public Serv. Comm'n, 906 F.2d 25, 40 _________________ ____________________ (1st Cir. 1990), cert. denied, 498 U.S. 959 (1990) (citing ____________ Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986) ________ ___________________ (quoting First Nat'l Bank v. Cities Service, 391 U.S. 253, _________________ ______________ 288-89 (1968))); see also Fed. R. Civ. P. 56(e). The Housing ________ Bank has offered nothing to show that no release was executed, or that the Settlement differs in its terms from the release agreed to by the parties. The Housing Bank merely presented several documents, none of which was fully executed, which appear from their prior dates and their incompleteness to be earlier drafts of the Settlement. Because none of these documents, including the Settlement, are notarized, it argues that there remains the unanswered question of where the notarized document is and what it says, -8- 8 requiring "further evidentiary development." However, "[a] court is not obliged to deny an otherwise persuasive motion for summary judgment 'on the basis of a vague supposition that something might turn up at the trial.'" Soar v. ____ National Football League Players' Ass'n, 550 F.2d 1287, 1289 ________________________________________ n.4 (1st Cir. 1977) (quoting Lundeen v. Cordner, 354 F.2d _______ _______ 401, 408 (8th Cir. 1966)), quoted in Playboy Enter., 906 F.2d _________ ______________ at 40. We conclude that there was no disputed issue of fact as to whether the Housing Bank had released Ponce from all claims related to the project.2 The Housing Bank also argues that at the time the release was executed it was unaware of the final extension to  ____________________ 2. The Housing Bank contends that the language of the Settlement could not be read as an effective release for present purposes because it referred explicitly only to the first two properly guaranteed disbursements to Capitana, and nowhere mentioned, either explicitly or by implication, the final, unguaranteed disbursement. However while the Settlement released Capitana only as to "the loan . . . secured by the [Housing Bank]," it released Ponce from "all claims related to" the project. The Housing Bank also argues that any claims to recover the payment to Ponce cannot be waived because such a waiver would contravene clear public policy, citing Brooklyn ________ Savings Bank v. O'Neil, 324 U.S. 697, 704 (1945) ("a _____________ ______ statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy"). The district court found that the statutory policy underlying Act 72 was, to paraphrase, to facilitate the construction of low- income housing. Ponce presented substantial evidence that cooperation between the Housing Bank and Ponce greatly facilitated the completion of the Colinas de Villa Rosa Project. We see no error in the district court's ruling that there was no violation of statutory policy in the present circumstances. -9- 9 Capitana's line of credit, and that any release was therefor obtained by fraud. There is no evidence to support this assertion. There is uncontradicted evidence tending to show that when the Housing Bank entered into the release, it had all relevant facts. Ponce submitted evidence which showed that, during construction of the project, various contractors would submit certifications of work performed to Capitana, as the developer, for payment. Because the Housing Bank guaranteed the loan, it had to approve each certification. For that reason, it contracted with Per z Miranda Engineering Services, to review all certifications submitted for payment by the contractors and, when satisfied that the certification reflected the job done, to recommend that the Housing Bank approve payment. The certifications were approved by the developer and an official at the Housing Bank and were sent to Ponce Federal for payment. This procedure was used throughout the construction of the project until its completion in 1984. The Housing Bank thus had the means at hand to keep track of how much money was being paid out to Capitana, and it at no time notified Ponce that it considered its obligations as guarantor at an end. The uncontradicted evidence also showed that an audit was conducted by a certified public accountant selected by the Housing Bank before it approved payment of Ponce's claim. The record contains a series of Ponce's ledger pages -10- 10 for loan #ML-5538 (the number assigned to the guaranteed loan), which show toward the bottom of the final page an increase of $954,609 to the amount owed by Capitana to Ponce.3 The auditor requested "all books, documents and files" relating to the loan; there was no evidence that he did not see and consider these pages in making his audit. In addition, as the Housing Bank alleges in its complaint, Ponce collected in excess of $7 million from Capitana over the life of the project. The auditor, in examining Ponce's records, did not report that the loan was paid in full. The audit revealed only certain bookkeeping errors resulting in a downward adjustment of Ponce's claim by some $98,783.46. Thus, the Housing Bank honored Ponce's request for payment only after it had independently determined the extent of its liability. Finally, Ponce submitted a sworn and notarized statement introduced in the Vega case, dated December 21, ____ 1989, from Mildred Goyco, who in 1984 was a vice president of the Housing Bank. In this statement Ms. Goyco states that  ____________________ 3. The Housing Bank argues that this exhibit proves that it had complied with all its obligations to Ponce by October, 1982, presumably because, as of that date, Capitana had no outstanding balance due with Ponce on the guaranteed portion of the loan. (We note that the district court explicitly found that the final credit extension was not covered by the guarantee.) However, this does not prove that the Housing Bank did not know of the final credit extension to Capitana, either at the time it was made, or at the time it entered into the release. -11- 11 she was contacted by Ponce in connection with the Vega case ____ for assistance in locating a document in the Housing Bank's files entitled "Agreement, Release and Payment of Warranty [sic]" executed by the parties and Capitana on December 7, 1984, and that after several tries the document could not be found. She asserted, however, that "the Housing Bank did know that the document must have existed and that it must have been duly signed by all the parties involved." Against this evidence of the Housing Bank's intimate involvement with all aspects of the project, the Housing Bank submitted a second, unsworn statement under penalty of perjury from Mildred Goyco, dated October 28, 1991, in which she states that the authorization by Mr. Fantauzzi to pay Ponce "was given with the factual impression that it was a 'bona fide' claim which arised [sic] under the certificate of insurance." This does not contradict Ponce's assertion that the Housing Bank knew of the irregular nature of the final disbursement, but nonetheless agreed to treat it as covered by the guarantee in order to facilitate the completion of the project. We therefore conclude that the district court's implicit determination that the Housing Bank had knowingly released Ponce from all claims related to the project was supported by the summary judgment materials referred to in Fed. R. Civ. P. 56(c). -12- 12 Under the statute that created it, the Housing Bank is a corporation which may sue and be sued. 7 L.P.R.A. 901, 910(a) (1982). The capacity to sue and be sued "is not only the power to bring an action, but is also the power to maintain it," Mather Constr. Co. v. United States, 475 F.2d ___________________ ______________ 1152, 1155 (Ct. Cl. 1973), quoted in 6A Charles Alan Wright _________ et al., Federal Practice & Procedure 1559 (1990). Implicit also is the power to settle. Under Puerto Rico law, "[a] compromise has, with regard to the parties, the same authority as res adjudicata." 31 L.P.R.A. 4827 (1990). Having once settled this matter, the Housing Bank may not reopen it now.4 Affirmed. Costs for appellee. _____________________________  ____________________ 4. As our decision disposes of all issues in this case, we do not reach the estoppel and statute of limitations issues raised by the Housing Bank in its brief. We note with respect to the latter issue, however, that the complaint, while somewhat unclear, may be read as stating causes of action sounding in tort, fraud, restitution, and illegality of the contract. This being so, the district court may have erred in finding that the entire action was time-barred under the fraud statute of limitations. However, as the claims sounding in tort, restitution and illegality are clearly claims "with respect to the project Colinas de Villa Rosa," the Housing Bank has released Ponce with respect to these claims, and there is no need to consider whether they were still viable as of the date of the complaint. With respect to the fraud claim, the Housing Bank argues that, there being no statute of limitations in Puerto Rico for nullity of a contract where consent was obtained by fraud, this claim cannot be time barred. Even if so, we have already said that the Housing Bank has not presented any evidence to defeat Ponce's motion for summary judgment as to fraud; whether its action is time- barred or not is not dispositive. -13- 13